[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Pursuant to an Order entered on February 12, 1992, the Superior Court, the Honorable Robert D. Krause presiding, approved the application of Maurice C. Paradis, then Director of the Department of Business Regulation, as Receiver of Heritage Loan and Investment Company ("Receiver") to have the Court appoint a master with respect to claims relating to "off-line" deposit accounts at Heritage Loan and Investment Company ("Heritage"). See the Order dated February 12, 1992. As a result of said Order, William J. McAtee, Administrator/Master of the Superior Court was appointed as Master in the above-captioned receivership.
The Order provided that the Master:
 "is appointed . . . for the purpose of hearing and determining the claims filed with the receiver relating to off-line deposit accounts, which claims shall be deemed to include claims to funds evidenced by handwritten or typewritten savings passbooks, claims to funds alleged to have been withdrawn without the depositor's authority to do so, claims to funds evidenced by safekeeping receipts, and claims to any funds which are not verifiable on the computer records maintained by Heritage Loan and Investment Company."
 "That Master McAtee shall have all of the powers of a Justice of the Superior Court with respect to the hearings and determination of off-line deposit account claims, including, without limitation, those powers enumerated in Rhode Island General Laws 8-2-11.1 (1985 Reenactment)."
R.I.G.L. 8-2-11.1 provides, in pertinent part, that:
 "Such administrator/master may be authorized: (1) To regulate all proceedings before him: (2) To do all acts and take all measures necessary or proper for the efficient performance of his duties; (3) To require the production before him of books, papers vouchers, documents and writings; (4) To rule on the admissibility of evidence; (5) To issue subpoenas for the appearance of witnesses to put witnesses on oath, to examine them and to call parties to the proceeding and examine them upon oath:"
In accordance with the above a hearing was held on the above referenced claim on July 9, 1992 and June 8, 1994. At the conclusion of the hearing, the parties submitted Post-Hearing Memoranda.
In the instant case, Claimant alleges a deposit of $100,000 into a Heritage account bearing number 02-14-001219-8 hereinafter referred to as the Claimed Account. (It should be noted that the last number in the above sequence is in dispute with the Receiver being unable to discern the correct number and the Claimant contending that it is an "8".) The Claimed Account was never entered into the records of Heritage nor was a deposit slip retained by the Claimant. In addition, no copies of signature cards for this account has ever been found in the records of Heritage.
Claimant testified that he understood the account to be a certificate of deposit for which interest would be paid upon maturity in December, 1990. The source of the initial deposit was a check in the amount of $114,000. The records of Heritage do in fact show that a check in that amount was deposited in the Heritage account at Fleet Bank on or about December 19, 1989 Claimant maintains that the proceeds of that check were distributed as follows first, $100,000 deposited into a certificate of deposit at Heritage which is the subject of the instant claim, second, two checks each in the amount of $5,000 which were given to Claimants daughters as Christmas gifts, and finally, $4,000 was retained by the Claimant.
The various records of Heritage that were introduced at the hearing do in fact show activity that, although by no means conclusive, do support similar transactions on that date. The aforementioned check was deposited into Fleet, two Heritage checks each for $5,000 were issued in the names of Claimant's children and are listed on the cash settlement sheet for December 19, 1989. The "plug figure" for December 19, 1989 does reflect a $100,000 transaction. The "plug figure" is not a device in accord with generally accepted accounting principles but was used at Heritage to balance out the daily settlement sheets. This plug figure at Heritage therefore represented a "bank within a bank", an increase in the figure represents money that had gone out of Heritage without a corresponding withdrawal, a decrease means that money came into Heritage and was not evidenced by a deposit or loan payment.
Claimant testified that he had no idea that the Claimed Account was treated any differently than any other account of his, or anyone else, at Heritage. The Claimed Account is evidenced by a Heritage passbook which Claimant maintains is the same as the passbooks presented to the Receiver and from which funds were paid. Furthermore, Claimant testified that he had on line passbook accounts that, from time to time contained typewritten entries.
Joseph Mollicone, Jr. also testified at the hearing. He stated that the Claimed Account represented funds not on deposit at Heritage but rather loans made to him and for which he and not Heritage were responsible. For this reason, says Mollicone, the Claimed Account was not entered into the records of Heritage.
When a party makes a claim for funds allegedly on deposit at a financial institution, the party so claiming bears the burden of proof to establish the existence of the account so claimed.O'Neil v. New England Trust Co., 28 R.I. 311, 67 A. 63 (1907). A passbook reflecting such a deposit is prima facie evidence of such a deposit. However, the Receiver may introduce evidence to refute the prima facie case.
The term "deposit" is defined at 12 U.S.C. § 1813(1) which state in pertinent part as follows:
 (1) The unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by a certificate of deposit. thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a travelers check on which the bank or savings association is primarily liable. . .
 (3) money received or held by a bank or savings association, or the credit given for money or its equivalent received or held by a bank or savings association, in the usual course of business for a special or specific purpose, regardless of the legal relationship thereby established, including without being limited to, escrow funds, funds held as security for an obligation due to the bank or savings association or others (including funds held as dealers reserves) or for securities loaned by the bank or savings association, funds deposited by debtor to meet maturing obligations, funds deposited as advance payment on subscriptions to United States Government securities funds held to meet its acceptances or letters of credit and withheld taxes: Provided, that there shall not be included funds which are received by the bank or savings association for immediate application to reduction of indebtedness to the receiving bank or savings association, or under condition that receipt thereof immediately reduces or extinguishes such indebtedness.
In Federal Deposit Insurance Corp. v. Philadelphia GearCorp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.ED.2d 428 (1986), the Supreme Court listed the standards to be met in order to be classified as a "deposit". The Court stated that to qualify as a "deposit" under 12 U.S.C. § 1813 (l)(1), it must be shown that: (1) there is an unpaid balance; (2) of hard earnings; (3) received or held by the bank; (4) in its usual course ofbusiness (emphasis added); (5) for which it has given or is obligated to give credit. In Philadelphia Gear, the Court held that a stand-by letter of credit did not fall within the meaning of an insurable "deposit" because it was only a contingent obligation and did not represent "hard earnings".
In the case at bar, the Court finds that the Claimant was unaware that his account was being handled any differently than an account opened in the usual course of business at Heritage. Claimant opened the account at Heritage, it was evidenced by a Heritage passbook, all of his dealings were with employees of Heritage. Mr. Mollicone may have understood that he rather than Heritage had control of the funds, however, this Court does not believe that Claimant was in a position to understand the distinction.
Accordingly, Claimant is entitled to a priority with the Receiver. Counsel will prepare an order.